UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM O'BRIEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:23-cv-02015-JPH-CSW ) |
| JACKSON, BISHOP, SHAW, KOENIG, | ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff William O'Brien alleges that Defendants Lt. Johnathan Jackson, Ofc. Alexzander Koenig, Ofc. Alex Shaw, and Ofc. Chance Bishop violated his Eighth Amendment rights by depriving him of the "basic necessities to clean himself" for a week while he was in restricted housing at Pendleton Correctional Facility ("PCF"). Dkt. 9 at 4. Defendants have moved for summary judgment on all claims.[1] Dkt. 30. For the reasons below, the Court **GRANTS** Defendants' motion for summary judgment.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and,

---

[1] Since filing his response to the summary judgment, Mr. O'Brien filed a motion for court assistance, advising the Court about the circumstances under which he submitted grievances to one of the Defendants. Dkt. 37. This motion, dkt. [37], is **GRANTED** to the extent that the Court considers it a surreply to the motion for summary judgment.

1

instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the

Plaintiff, Mr. O'Brien, and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73. The following facts are undisputed except as noted.

Mr. O'Brien did not have his personal hygiene items, including toothbrush, toothpaste, shower shoes, washrag, his own soap, and eating utensils from August 19, 2023, to August 25-26, 2023[2], and was limited to one change of clothing per week from August 19, 2023, to September 11, 2023. At all times relevant to this matter, Mr. O'Brien was incarcerated at PCF where Defendants were employed.

Before August 19, 2023, Mr. O'Brien resided in O-Dorm, which is a general population dorm. Dkt. 31-1 at 10 (O'Brien Dep.). In O-Dorm, Mr. O'Brien had personal hygiene items—soap, shampoo, a laundry bag, toothpaste, toothbrush, towels, shower shoes, eating utensils—and clothing items that he had purchased from the commissary. *Id.* at 11–12.

On August 19, 2023, Mr. O'Brien was transferred to G Cellhouse ("GCH"), a restricted housing unit. *Id.* at 12. As per protocol, staff at PCF were tasked with packing Mr. O'Brien's personal property, creating an inventory, and then creating a "care package" consisting of Mr. O'Brien's personal property that he would be permitted to have upon arrival at GCH. Dkt. 31-2 at 1–2 ¶¶ 6–11 (Ofc. Bishop Decl.); dkt. 31-1 at 15–16. Ofc. Koenig escorted Mr. O'Brien to GCH and was responsible for giving him his care package. Dkt. 31-1 at 10. Ofc. Bishop was the property officer in GCH. Dkt. 31-2 at 1 ¶ 4.

---

[2] The designated evidence shows that Mr. O'Brien received some of his personal hygiene items on August 25 and the rest on August 26.

When Mr. O'Brien was transferred to GCH on August 19, he did not receive his care package. Dkt. 31-1 at 15. During his first week at GCH, Mr. O'Brien complained and handed request slips to Lt. Jackson and Ofc. Bishop about retrieving his property. *Id.* at 17–18. On one instance when Mr. O'Brien was speaking to Ofc. Shaw about needing his clothing and hygiene items, he complained about developing a rash. *Id.* at 31. While medical staff gave Mr. O'Brien cream for the rash, Ofc. Shaw told Mr. O'Brien that it was not his job, and he was too busy. *Id.* at 32.

On August 24, 2023, after Mr. O'Brien complained to nonparty Ofc. Goodnight about not having received his property, Ofc. Goodnight e-mailed Ofc. Bishop asking for Mr. O'Brien's care package. Dkt. 35-1 at 12–17 (email thread). Ofc. Bishop then e-mailed Ofc. Jackson and others to urge them to get Mr. O'Brien's care package to him. *Id.* Mr. O'Brien received his personal hygiene items on August 25 and 26. Dkt. 31-1 at 34–35.

Inmates in GCH are offered showers and a cup of three-in-one body wash, shampoo, and conditioner three times a week. *Id.* at 13; dkt. 31-2 at 3 ¶ 18. Between August 19 and August 25, Mr. O'Brien was given the opportunity to shower three times, dkt. 31-1 at 34, but he declined because he did not have a towel, a washrag, or a change of clothing. *Id.* at 13–14, 35. He also did not have shower shoes, which Mr. O'Brien wore for hygienic reasons. Dkt. 35 at 1, 11–12.

Mr. O'Brien received his laundry bag around September 11, 2023. Dkt. 31-1 at 35. Inmates in GCH can use the laundry bag to launder their clothes once a week. *Id.* at 14. For the first week in GCH, Mr. O'Brien did not have any

4

change of clothes but only the clothes he was wearing. *Id.* at 35–36. On August 25 or 26, Mr. O'Brien received two changes of clothes along with his personal hygiene items. *Id.* at 35. The three sets of clothes were not enough to keep Mr. O'Brien clean because of the "very dirty" conditions which left his clothes ruined from "dirt and sweat." *Id.* at 35. Furthermore, the clothing quickly became drenched in sweat because it was very hot out and GCH does not have air-conditioning or fans. Dkt. 35 at 2. Mr. O'Brien complained to Lt. Jackson several times about his laundry bag after giving him the initial request form for the bag. Dkt. 31-1 at 36–37. Mr. O'Brien also claims, and Defendants dispute, that Ofc. Bishop and Ofc. Koenig were aware that he did not have his laundry bag because of their positions and because he complained. Dkt. 35 at 3.

As a result of not having his personal hygiene items for a week and very few changes of clothes for three weeks, Mr. O'Brien suffered from body odor, rashes, and scars from scratching himself that lasted for several months. Dkt. 31-1 at 37–39; Dkt. 35 at 2. He sought medical help, and was prescribed the topical cream triamcinolone, which he used from October 10, 2023, until January 2, 2024. Dkt. 35 at 2; dkt. 35-1 at 5. He also suffered from anxiety, vomiting, and diarrhea. Dkt. 35 at 3. Defendants dispute the severity and cause of Mr. O'Brien's injuries. Dkt. 36 at 4.

### III.
### Discussion

Mr. O'Brien argues that Defendants subjected him to inhumane conditions of confinement by depriving him of his personal hygiene items for a week and limiting him to only three changes of clothes for three weeks. Dkt. 35 at 1.

5

Defendants argue that they are entitled to summary judgment because (1) the delay in delivering his care package and laundry bag did not create objectively serious conditions; (2) Defendants were not subjectively aware of any serious conditions and once they became aware, they took steps to remedy the problem; and (3) Defendants are entitled to qualified immunity. Dkt. 32. The Court addresses qualified immunity first because it is dispositive.

### A. Qualified Immunity Standard

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Although qualified immunity is an affirmative defense, a plaintiff has the burden of defeating it once defendants raise it. *Archer v. Chisolm*, 870 F.3d 603, 613 (7th Cir. 2017). Thus, to overcome qualified immunity, Mr. O'Brien must show that: (1) the Defendants violated his statutory or constitutional rights; and (2) the right was clearly established at the time of the challenged conduct. *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025). Courts may exercise their discretion to choose which element to address first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Here, the Court begins and ends its analysis with the second element because it is dispositive.

To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). "Existing precedent must place the constitutional or statutory

6

question beyond debate" so that "every reasonable official would understand that what he is doing is unlawful." *Sabo*, 128 F.4th at 844 (internal quotations and citations omitted). Clearly established law cannot be framed at a "high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), because that would evade the crucial question—"whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). The right has been defined "too generally if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established." *Sabo*, 128 F.4th at 844. "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (cleaned up).

Existing precedent does not have to be "directly on point" to clearly establish a right. *Id.* at 545. However, to meet his burden on this element, Mr. O'Brien must "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019). The failure to do so means that Mr. O'Brien "cannot defeat" a "qualified immunity defense." *Findlay v. Lendermon*, 722 F.3d 895, 900 (7th Cir. 2013) (reversing summary judgment denial on qualified immunity grounds

7

because plaintiff did not identify a sufficiently analogous case or explain why defendant's actions were plainly excessive).

## B. Application

To succeed on his Eighth Amendment conditions-of-confinement claim, a plaintiff must show that Defendants deprived him of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The minimal civilized measure of life's necessities includes access to showers and hygiene items such as soap, toothpaste, and cleaning supplies. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006); *Jaros v. Ill. Dept. of Corrs.*, 684 F.3d 667, 670–71 (7th Cir. 2012); *Board v. Farnham*, 394 F.3d 469, 483–84 (7th Cir. 2005). Furthermore, conditions are considered collectively as "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis*, 468 F.3d at 493; *see also Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). To violate the Eighth Amendment, the conditions of confinement must be objectively serious and create "an excessive risk to [the inmates'] health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). This means that short-term deprivations do not necessarily violate the Eighth Amendment. *See, e.g.*, *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) (24-hour delay in providing hygiene items to prisoners did not violate the 8th Amendment where no evidence that cells were unusually dirty or unhealthy).

"When deciding whether a public official is entitled to qualified immunity, "'[the Court] simply assume[s] the disputed facts in the light most favorable [to

8

the plaintiff], and then decide[s], under those facts, whether the [defendants] violated any of [the plaintiff's] clearly established constitutional rights." *Board*, 394 F.3d at 476. So here, the Court assumes that Mr. O'Brien was deprived of his personal hygiene items for seven days during which he did not have any additional clothes, was limited thereafter to one change of clothing per week for three weeks by having a total of three sets of clothes, and during those three weeks had the opportunity to shower with soap three times per week. Dkt. 32 at 11; dkt. 36 at 7–8.

Mr. O'Brien does not point to a reasonably analogous Supreme Court or Seventh Circuit case showing that any reasonable correctional officer would have known that these circumstances clearly violated a prisoner's Eighth Amendment's right to be free of conditions that pose and unreasonable risk of serious damage to his health. *See* dkt. 35 (Mr. O'Brien's response to Defendants' motion for summary judgment). The Court has conducted its own review of potentially applicable Supreme Court and Seventh Circuit cases, *Taylor v. Schwarzhuber*, 132 F.4th 480, 487 (7th Cir. 2025), and did not find any reasonably analogous Supreme Court or Seventh Circuit case from which "every reasonable official would understand that what he is doing is unlawful." *Sabo*, 128 F.4th at 844. While there are many cases involving Eighth Amendment claims brought by a prisoner based on the deprivation of personal hygiene items and/or squalid living conditions, none involve facts similar enough to show that any reasonable prison officer would have known that the circumstances here violated Mr. O'Brien's clearly established Eighth Amendment rights.

In *Board v. Farnham*, 394 F.3d 469, 483–84 (7th Cir. 2005), the Seventh Circuit affirmed the denial of summary judgment on the defendants' qualified immunity defense when one plaintiff was denied toothpaste for three-and-a-half weeks and another was denied toothpaste for 90% of a 126 stay in jail.[3] *Board* explained that in *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001), the Seventh Circuit held that the defendants violated the Eighth Amendment by depriving the prisoner of dentures for months. The court reasoned that "dental care is one of the most important medical needs of inmates." 251 F.3d at 593. Based on *Wynn*'s holding, the defendant in *Board* "was or should have been 'on notice' and had 'fair warning' that it would be unconstitutional for him to deny oral hygiene products to pretrial detainees under his watch for long periods of time." *Board*, 394 F.3d at 484. In *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988), the Seventh Circuit held that a 10-day deprivation of toothbrush, toothpaste, and soap did not violate the plaintiff's 8th Amendment rights.

The Seventh Circuit has repeatedly held that limiting prisoners to showering only once a week does not violate the Eighth Amendment. *See Jaros*, F.3d 684 at 671 (collecting cases). The Seventh Circuit has also held that prisoners must be provided with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Gray*, 826 F.3d at 1005. In *Gray*, the court reversed summary judgment in defendants' favor where the plaintiff was

---

[3] Even though the *Board* plaintiffs were pre-trial detainees, the court discusses the right to oral hygiene by using the deliberate indifference standard from the 8th Amendment. *See Board*, 394 F.3d at 481–82.

subjected to filthy and unhygienic conditions from rodents and pests for months, 826 F.3d at 1005.  In *Gillis*, the plaintiff was not given an opportunity to shower for nine days, during which time he was naked, had to sleep on a concrete floor with no bedding, was provided no soap, and deprived of heat. 468 F.3d at 491–93.

Here, Mr. O'Brien was deprived of a toothbrush and toothpaste, as well as other personal hygiene items, for seven days, which is less than the 10 days in *Harris* and far less than the number of days in *Board*.  Mr. O'Brien was also limited to only three sets of clothing for a period of three weeks, although he was given the opportunity to shower with soap three times per week.  The Court must evaluate the collective impact of all the conditions Mr. O'Brien was subjected to, *Gray*, 826 F.3d at 1005, so that means considering the overall impact of having no personal hygiene items for a week, three changes of clothes for a three-week period, and being given access to a shower and soap three times per week.

While Mr. O'Brien certainly experienced very unpleasant conditions for his first several weeks in GCH, his lack of access to personal hygiene items was relatively short (a week), he still had access to showers and soap three times per week, and he had several changes of clothes. So, with respect to these conditions of confinement, the Court cannot conclude that "every reasonable official would understand that what he is doing is unlawful." *Sabo*, 128 F.4th at 844. Thus, the above-described "[e]xisting precedent" did not "place the constitutional or statutory question beyond debate."  *Sabo*, 128 F.4th at 844.  In the absence of reasonably analogous precedent, Mr. O'Brien has not shown that Defendants'

11

```
```

conduct was "so egregious that it is an obvious violation of a constitutional right." *Leiser*, 933 F.3d at 701.

For these reasons, the Court **grants** summary judgment on the grounds of qualified immunity.

## IV.
## Conclusion

For the above reasons, Defendants' motion for summary judgment on all claims Dkt. [30], is **GRANTED**. Mr. O'Brien's Eighth Amendment claims against Defendants are dismissed with prejudice. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 12/9/2025

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

WILLIAM O'BRIEN
108485
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel.